*Higgins, Kingsley & Williamson, Arnold Williamson, Jr.,
William A. Gunning,* for petitioner.

*Hinckley, Allen, Salisbury & Parsons, Matthew W. Goring,
Thomas J. Hogan,* for respondents.

OPINION OF THE JUSTICES TO THE SENATE

RE RESOLUTION S-4.

JANUARY 22, 1954.

OPINION to senate in answer to question propounded in
accordance with provisions of §2, art. XII, amendments to
R. I. constitution.

January 22, 1954

To the Honorable, the Senate
   of the State of Rhode Island and
      Providence Plantations

We have received from the honorable senate a resolution which was passed at the special session of the general assembly held in June 1953 and was forwarded to us after the adjournment thereof. It requests, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, our written opinion upon a question of law which is stated as follows:

> "May the general assembly of Rhode Island by an act duly passed and approved by the governor provide for not less than three election codes, each providing for a different type of municipal election and that one of the codes shall become effective for a particular city or town when approved by the qualified electors of that city or town voting at a general or special election?"

Obviously the question is extremely broad and is not related to any particular enactment from which we could know precisely the nature and extent of the provisions contemplated under the description of "three election codes" and "a different type of municipal election." In the circumstances, therefore, our reply must necessarily be quite general, merely attempting to answer in principle what we conceive to be the underlying problem without reference to any specific provisions concerning which we have no detailed information.

We have pointed out previously in our *Opinion to the House of Representatives*, 80 R. I. 288, 96 A.2d 627, and again in our opinion to the honorable senate of even date herewith in answer to another question, in substance that the full power over the conduct of elections is vested exclusively in the general assembly by virtue of section 7 of article XXIX of amendments to the constitution of this state; that the general assembly alone may legally exercise

this power; and that constitutionally such power may not be delegated to a city or town which has adopted a home rule charter pursuant to the provisions of article XXVIII of amendments to the constitution.

Accordingly, if the proposed enactment, whether it be a general or special statute, purports to delegate to a city or town the authority to prescribe nonpartisan nominations and elections, or to fix the time of general municipal elections, or to specify the number of signatures of qualified voters required on nomination papers of a candidate for municipal office, or indeed to delegate any of the power essential to the conduct and control of municipal elections, our answer to the question would be in the negative.

On the other hand, if the legislative discretion and power over the conduct of elections, which is vested in the general assembly by article XXIX of the amendments, is exercised exclusively by that body in the proposed enactment, and if the "three election codes, each providing for a different type of municipal election" are otherwise in conformity with constitutional requirements, our answer might well be in the affirmative. In other words, conceivably the general assembly could pass an enabling or permissive statute providing certain optional plans for the holding of municipal elections. In the same statute it could also authorize a city or town to hold a general municipal election in accordance with the express provisions of one of said plans and could validly provide therein that any such plan should first be presented to, and be approved by, the qualified electors of such city or town voting at a particular election as specified in the statute.

In such a permissive statute, of course, each of the optional plans or "codes" would have to set forth all the provisions necessary for the proper holding of a municipal election so that it would be held and conducted exclusively in accordance with and by virtue of the provisions enacted by the general assembly. Otherwise the claim might be made that

the election was being held by virtue of an invalid delegation to the municipality of legislative discretion or authority that is vested exclusively in the general assembly. Moreover, as indicated, the general assembly should also prescribe in the statute for the time and type of election at which the qualified electors of a municipality would be permitted to vote upon one of the plans as provided for in the statute before the municipal election could be held thereunder.

In our judgment, therefore, it is possible for the general assembly to enact legislation whereby municipal elections may be held legally under one of several plans as prescribed by the statute when such plan is approved by the qualified electors of a city or town at an election provided for in the statute. In this general connection it should be observed that authority can be found to the contrary, particularly in some earlier cases which appear to adhere to a strict view that an act must be complete and operative when it leaves the general assembly and is signed by the governor. According to that view the general assembly may not make such a statute depend on any future contingency nor leave to the approval by a municipality or others the operative effectiveness of the statute.

On the other hand, the weight of more recent cases in various jurisdictions seems to support the view that where the provisions of an enabling or permissive statute are made available to a municipality on the happening of a certain event as therein prescribed, and where no exercise of discretion by others as to the substance of its provisions is permitted beyond its mere approval in accordance with the terms thereof, the enabling or permissive statute is not considered to be an illegal delegation of legislative power to a municipality.

So long as the mode of approval by the qualified electors of a municipality and the election itself are authorized and governed by the express provisions enacted by the general

assembly, the answer to the present question in an otherwise proper case might well be in the affirmative.

EDMUND W. FLYNN
ANTONIO A. CAPOTOSTO
HUGH B. BAKER
FRANCIS B. CONDON
JEREMIAH E. O'CONNELL